**Federal Defenders OF NEW YORK, INC.**

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Southern District

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

January 28, 2016

*Via ECF and Hand Delivery*
The Honorable Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Whykee Johnson,*
               14 CR 470 (RA)

Dear Judge Abrams:

We write in anticipation of Whykee Johnson's sentencing, scheduled for February 11, 2016. On September 25, 2015, Mr. Johnson pleaded guilty to one count of willfully failing to remain in the custody of a halfway house.

Independent of the sentence the Court imposes for this case, Mr. Johnson is already subject to significant time in jail – he is currently serving an eighteen month to three year state sentence and, because he left the halfway house while serving a 2011 federal sentence, he will have to serve roughly a year more on that case. (Defendants who leave a halfway house before the conclusion of their sentence must "pay back" to the B.O.P. all of the good time credit they had earned while incarcerated and any time they had left on their halfway house sentence before they left the halfway house). Indeed, this latter undischarged sentence punishes Mr. Johnson for the very same conduct for which he now stands to be sentenced.

In light of his two undischarged sentences, Mr. Johnson's earliest possible release date is April 2017, and it is far more likely that he will not actually be released until closer to his maximum release date in October 2018. Since he has been detained since October 17, 2014, Mr. Johnson therefore can expect to be in prison for close to four years even before serving his sentence, if any, on this case.

The Honorable Ronnie Abrams                                          January 28, 2015
Page 2 of 6

Re:   *United States v. Whykee Johnson,*
      14 CR 470

Against this unusual background, there is really little accomplished by pushing his release date even further into the future and, in fact, is contrary to the parsimony clause of § 3553(a), requiring sentences be "sufficient, but not greater than necessary." For the following reasons, we ask that the Court impose a sentence of time served.[1]

BACKGROUND

Mr. Johnson acknowledges that he has a criminal record, about which he is not proud. As a young man – in his teens and early 20s – he found himself in and out of criminal trouble repeatedly. And, as evidenced by his offense conduct here, he has had trouble in the past transitioning into his community after serving prison sentences. But looking down the road at another significant period in jail (probably around four years), Mr. Johnson, who turned 30 this month, is ready to make some important changes. He has a supportive community on the outside. *See* attached letters of support, Exhibits C – F. Mr. Johnson does not want to let his family and friends down, yet again.

To that end, Mr. Johnson has worked closely with the Federal Defender's social work staff and made an impactful connection with Rachel Colman, a social work intern who has visited him weekly for the last several months. Mr. Johnson suffered with ADHD in his school years and was placed in special education classes. Mr. Johnson spent most of his teen years being shuttled in and out of juvenile and criminal courts. Remarkably, despite this background and all of its various opportunities for social work intervention, Ms. Colman is the first social service professional with whom Mr. Johnson has worked.

Mr. Johnson's progress with Ms. Colman has been groundbreaking. Attached as Exhibit A is a letter to the Court from Ms. Colman describing her work with Mr. Johnson and her impressions of his background and his future potential. And, attached as Exhibit B is a concrete reentry plan on which Ms. Colman and Mr.

---

[1] The Court also can avoid further extending Mr. Johnson's release date by sentencing him to a period of imprisonment to run concurrent to his undischarged sentences. However, because of the interplay between three sentences and multiple agencies tasked with calculating Mr. Johnson's time (including New York City's Riker's Island, New York State's Department of Corrections, and the federal B.O.P.) such a sentence easily can result in computation errors and additional time unnecessarily being assessed against the defendant.

The Honorable Ronnie Abrams                                              January 28, 2015
Page 3 of 6

Re:   *United States v. Whykee Johnson,*
      14 CR 470

Johnson collaborated.

As the Court will see, Mr. Johnson has become future-oriented with Ms. Colman's help in a way he never was before. As Ms. Colman explains:

> Social service programs as well as goal setting were novel concepts for Mr. Johnson during our initial phases; however, over time Mr. Johnson connected to the idea of setting goals and enrolling in programs. Mr. Johnson expressed a strong desire to become actively involved in the planning process for his future and the kinds of activities he wants to incorporate into his life…."
> Exhibit A.

Mr. Johnson now has a realistic plan in place when he is released, accounting for his housing, employment, and self-improvement. He first will live with his parents until he and his long-term girlfriend, LaToya Johnson, are ready to transition to an apartment of their own. Ms. Johnson miscarried the couple's first child shortly after Mr. Johnson was arrested and they have decided to wait to try to conceive again until after Mr. Johnson is settled and successfully reintegrated. Mr. Johnson has no children so he can focus singularly on his own self-improvement.

Mr. Johnson is set on finding long-term employment. Ms. Colman has introduced Mr. Johnson to South Bronx Overall Economic Development Corporation ("SoBro"). Mr. Johnson qualifies for SoBro's vocational and career training. He is excited about the opportunities available through SoBro. In the short-term, Mr. Johnson has been employed as a mover in the past and intends to seek out temporary work in the industry while he gets himself steady. He also wants to get his G.E.D. and is currently enrolled in the M.C.C.'s G.E.D. classes.

Mr. Johnson's family is deeply religious but before recently Mr. Johnson shunned religion. Since his most recent incarceration, he has connected with his own spirituality and plans to attend his grandmother's church when he is released. He currently attends religious services at the M.C.C. – something he has never done during any of his prior prison sentences.

Mr. Johnson is genuinely ready for change. As Ms. Colman explains, he is aging out of the adolescent impulse decision-making that explains, in some part, his

The Honorable Ronnie Abrams	January 28, 2015
Page 4 of 6

Re:*United States v. Whykee Johnson,*
14 CR 470

prior problems. Those closest to him see the positive transformation. As Ms. Johnson eloquently writes to the Court:

> I can honestly say Whykee has really turned over a new leaf and has grown as a person.
>
> * * *
>
> Whykee [ ] has addressed to me how he wants to better himself as a person. He wants to better himself in education, and getting a job, as well as not being judged for his past history, and his mistakes he made in the past, and he wants the chance to do right with a good support system. Whykee does well when he is around the right people and has structure in his life. If he is given the opportunity to be put back in a structured situation I am confident that he will do well. I will continue to support him throughout.
>
> Exhibit C.

## A TIME SERVED SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY

The overarching command of Section 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. 18 U.S.C. § 3553(a)(2). To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

As described above, for his failure to return to the halfway house, Mr. Johnson will serve about a year more in federal custody even before he is sentenced by this Court. This additional time is more than sufficient to satisfy all the purposes of sentencing for this offense, including punishment and deterrence. Adding another couple years on top of an already significant punishment makes little sense. [2]

---

[2] The advisory Guidelines recommend a sentence between 27 and 33 months. Pursuant to 18 U.S.C. § 3584(a), the sentence imposed by the Court may be imposed

The Honorable Ronnie Abrams                                    January 28, 2015
Page 5 of 6

Re:     *United States v. Whykee Johnson,*
        14 CR 470

What is more, Mr. Johnson must serve as much as three years for a separate offense – time that will not run concurrent to the time he owes to the B.O.P. As a result, even before he is sentenced here, Mr. Johnson has as long as a four year sentence ahead of him.

Because Mr. Johnson is in federal custody on a *writ*, he can expect to be shuttled back and forth between state and federal facilities to complete his three undischarged sentences, making his time even more difficult. Because of the complexities of calculating Mr. Johnson's multiple sentences, he may lose time on the state-end when he is returned there and, at a minimum, will be entwined in calculation-litigation for which he is unlikely to be appointed a lawyer.[3]

Four years in jail – especially when served in flux as Mr. Johnson's time now must be served – is a very long sentence. *Indeed, it will be the longest sentence Mr. Johnson ever has faced.* In those four years, Mr. Johnson certainly will reflect not only on his state offense – for which the bulk of that four year sentence was imposed – but also on his federal transgressions. As evidenced by his work with Ms. Colman and his new focus on his future, Mr. Johnson already has started this hard but important work.

---

to run concurrently or consecutively. The Probation Department recommends a sentence of 33 months, but does not clarify whether it recommends the sentence run concurrent or partially concurrent to either of Mr. Johnson's two undischarged sentences.

[3] Mr. Johnson served "city time" on Riker's Island on his state case for nine months. When he was supposed to be transferred upstate to serve the remainder of his state sentence, he instead was transferred on a *writ* to federal custody. Because he is here on a *writ*, he is receiving no federal credit for the last six months he has been detained at the M.C.C. After sentencing here, he will be returned to the state authorities who will then have to calculate how much time remains on his sentence, crediting both his "city time" and his time at the M.C.C. Individuals with whom I spoke in the Department of Corrections were not confident that that would be done correctly. After completing his state sentence, he will be returned to federal custody to serve the time he owes as a result of leaving the halfway house and the time, if any, imposed as a result of the instant case.

The Honorable Ronnie AbramsJanuary 28, 2015
Page 6 of 6


Re:*United States v. Whykee Johnson,*
14 CR 470

## CONCLUSION

Based on the foregoing and in an appeal to reason and logic, we ask that the Court impose a sentence that does not extend the length of Mr. Johnson's incarceration past the completion of his two undischarged sentences. Mr. Johnson has accepted that he will be in prison likely until 2018. Although still far away, that release date is a light at the end of his tunnel and he is preparing positively for it. Extension of the release date will serve to extinguish the hope he has for his future and is far greater than necessary to accomplish our system's goals.


Respectfully submitted,

/s/

Julia L. Gatto, Esq.
Assistant Federal Defender
212.417.8750


cc:A.U.S.A. Jessica Fender (via ECF)